UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

-vs-

MARTY SCOTT,

                                    Defendant.
_____

                                    DECISION AND ORDER

                                    04-CR-6102 (CJS)

INTRODUCTION

        Now before the Court is a "Motion Pursuant to the First Step Act Section 404(b)

Reduction in Sentence and Compassionate Release § 3582(c)(1)(A)" (ECF No. 42), as

supplemented by two additional submissions (ECF Nos. 44 & 48) and a reply (ECF No.

54).[1]  For the reasons discussed below, Defendant's applications are denied.

BACKGROUND

        The reader is presumed to be familiar with the history of this case.   Briefly, on

June 24, 2004, a four-count indictment was returned against Defendant.   In pertinent

part, Defendant was charged, in Count 1, with conspiracy to distribute 50 kilograms or

more of marijuana, 50 grams or more of cocaine base, and 5 kilograms or more of cocaine

in violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C); in Count 2, with

_____

[1] Prior to the filing of this motion, on February 11, 2020, the Court granted Defendant's motion for
appointment of counsel. *See*, ECF No. 39.   The Court appointed a member of the Office of the Federal
Public Defender to represent Defendant.   Subsequently, however, on April 18, 2022, Defendant
submitted the subject motion (ECF No. 42) proceeding *pro se*.   On May 19, 2022, Defendant
supplemented his motion with an additional pro se submission (ECF No. 44).   On June 16, 2022,
Defendant's newly-substituted attorney filed an additional supplemental memorandum of law on his
behalf (ECF No. 48).

possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c)(1)(A)(i); in Count 3 with Conspiracy to Commit Hobbs Act Robbery in violation of 18 U.S.C. § 1951;[2] and in Count 4 with using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1) and (2). (Docket Item 1).

The government also filed an information pursuant to 21 U.S.C. § 851 alleging Defendant's prior felony drug conviction, for Criminal Possession of a Controlled Substance in the Third Degree, a Class B felony, in violation of New York Penal Law § 220.16,[3] as the basis to enhance his sentence on the drug conspiracy charge (ECF Nos. 18, 21).   Prior to that, the statutory sentencing range for Count 1 had been ten years to life in prison.   However, due to the Section 851 information, the mandatory minimum term of imprisonment on Count 1 was increased from 10 years to 20 years.

As will be discussed further below, Defendant eventually pled guilty to Counts 1 and 2 of the Indictment.   Prior to that, at an appearance before the undersigned relating to an evidentiary hearing, the parties placed certain information on the record concerning the Defendant's rejection of a potential plea agreement. *See*, Transcript (ECF No. 33). In particular, Defendant's counsel noted that Defendant had turned down an offer to plead guilty in exchange for a 25-year sentence, after which the following discussion took place:

THE COURT: Refresh my recollection, [AUSA] Mr. Sherman. If convicted

---

[2] Count 3 specifically involved a conspiracy to rob other drug dealers of money and drugs. *See*, Indictment, Count Three (Referring to, "in particular, the robbery of money, jewelry and controlled substances from individuals engaged in the unlawful distribution and possession of controlled substances, including cocaine and cocaine base.").

[3] In 2002 Defendant was convicted in New York State of Criminal Possession of a Controlled Substance in the Third Degree, in satisfaction of charges of Criminal Sale of a Controlled Substance in the Second Degree and Criminal Possession of Marijuana in the Fifth Degree. According to the Presentence Investigation Report in this action, the details of the offense were as follows: "According to the police report prepared by the Rochester Police Department (RPD), a search warrant was executed at 344 Durnan Street in Rochester on April 5, 2001, after an undercover officer purchased two eight balls of cocaine for $1,200 from the location on the same date.   Ther defendant and Carlos White were arrested while in possession of the buy money."

of these charges -- what exactly is Mr. Scott charged with, how many counts?

MR. SHERMAN: Your Honor, I know there is a drug conspiracy count, a 924(c) count, a Hobbs Act count, Hobbs Act conspiracy count, and a 924(c) count related to that.   Essentially, it's equivalent of the [Anthony] Murphy[4] indictment.

THE COURT: What would be the minimum statutory sentence?

MR. SHERMAN: If he is convicted of everything?

THE COURT: Yes.

MR. SHERMAN: With respect to the two 924(c) counts, that is mandatory 30 years; five and 25 consecutive. The drug count, without a prior drug felony, which is my recollection, Mr. Scott has one, 10 mandatory minimum, with the prior felony is 20, that would be 55 years or 50 years, and then there is no mandatory minimum on the Hobbs conspiracy, but has a 20-year maximum.

THE COURT: Mr. Scott, again, you're shaking your head. I don't care what you do. Whether I'm trying your case or another one, I'll be here. I want you to come up and understand what's happening here. I want it clear to you, because it's obviously an important decision. I know it's one you [have] thought about, and, in one sense, [you might] thin[k, if], I'm going away from 25 years, I might as well go for 55 years. That is why I ask about the statutory minimums. As things stand now, I don't know if you would be convicted. You have a better idea of what the prosecution has against you.

MR. SHERMAN: Just to clarify, he has a prior drug felony.

THE COURT: If you were convicted of the charges, what Mr. Sherman is indicating is that you would get a 20-year minimum on the drug conspiracy, and, under law, the two gun charges would have to run consecutive to that. That would mean the first gun charge would add five years consecutively to get you to 25, and the second gun charge would, by law, have to be

---

[4] *See, generally, United States v. Murphy*, No. 21-1750, 2023 WL 3064464, at *1 (2d Cir. Apr. 25, 2023) (Affirming prison sentence of life plus fifteen years).

consecutive to get you to the 50. If you were convicted, the minimum I could give you under law would be 50 years. Is that correct, Mr. Sherman?

MR. SHERMAN: Yeah.

THE COURT: 50 years.   So I want that clear, the minimum that I could give you.

MR. SHERMAN: Your Honor, just so we're making the record real clear. It is alleged, and this Court has already heard testimony at the Murphy trial, and, again, we're not going to get into the merits, the Court heard testimony that Mr. Scott participated in a homicide of Lamont Gordon.[5] If we go through all of this again, based on what I said in the presentence report in that case, I know that the Guideline recommendations from Probation would be life.[6] So, again, let me put one other thing on the record. I know I'm not a witness, I want everyone to understand this, and Mr. Scott, I think, knows this to be true. Before he was indicted . . . Officer Brennan, and I believe Investigator Janus went out to see him in Batavia and told him he was going to be charged and told him that instead of waiting to be indicted, if he wanted to agree to plead to the Hobbs Act, a 20-year maximum, we would get him an attorney and do that. And he declined that offer. He then was indicted, and we made the offer that now has been on the table. And we're now at the point where he has persisted in not availing himself of that offer. And I just, as Mr. Schiano obviously wants to make clear to Mr. Scott, that there [are] severe consequences potentially going forward here.

THE COURT: I frankly don't recall. It was a while ago with the Murphy trial. You have a better recollection of the testimony than I do. My only concern

---

[5] AUSA Sherman was referring to the fact that at Anthony Murphy's trial, Ted Francis testified that Murphy had arranged to sell 3 kilos of cocaine to Lamon Gordon, but actually intended to rob Gordon. Francis further testified that on December 9, 2000, Murphy, Francis and Defendant Marty Scott waited at an unused apartment for Gordon to arrive with the money, after which Murphy and Francis strangled Gordon and took the money ($50k), and then Murphy, Francis and Defendant disposed of Gordon's body by placing it in a box and leaving it inside Gordon's van on a street in Rochester, where it was found one month later. *See*, Anthony Murphy Revised PSR at ¶ ¶ 45-46, 01-CR-6087, ECF No. 637 at p. 12.

[6] *See, United States v. Murphy*, No. 21-1750, 2023 WL 3064464, at *1 (2d Cir. Apr. 25, 2023) ("The district court proceeded to resentence Murphy to life imprisonment plus 15 years. Murphy now appeals, arguing that the district court miscalculated the applicable United States Sentencing Guidelines range and that his sentence was substantively unreasonable. We assume the parties' familiarity with the facts, the procedural history of the case, and the issues on appeal. First, the district court correctly determined the applicable Guidelines range because Lamont Gordon's murder was "relevant conduct" for Murphy's drug-conspiracy conviction.").

4

is, Mr. Scott, you know what you're facing. What you want to do is your decision. But after today's date, the government is saying, we're not offering anything. The Court has no role in plea bargaining. That is the government. After today, they are not offering you anything. You heard, and the potential is there to do the, frankly, the 50 years. How old are you?

THE DEFENDANT: 36.

THE COURT: If you do 50 years, that is essentially a life sentence, it's your call.

(ECF No. 33).   At Defendant's request, the Court adjourned the evidentiary hearing to allow him to discuss the matter further with his attorney.   On December 3, 2004, the Government presented Defendant with a proposed Plea Agreement and the matter was adjourned again to allow Defendant to consider the agreement.

On December 10, 2004, Defendant appeared with his attorney before the undersigned and pleaded guilty to Counts 1 and 2 of the indictment (Docket Item 19) pursuant to a Plea Agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, in which the parties agreed that a 300-month (25-year) prison sentence, which was the statutory mandatory minimum for Counts 1 and 2 for a defendant with a prior felony drug conviction, was appropriate.   Defendant further agreed to waive his right to appeal or collaterally attack such a sentence.   In the Plea Agreement, Defendant admitted, among other things, that over a ten-year period, in furtherance of the charged conspiracy, he had distributed narcotics in New York, Kentucky, and Indiana, while possessing a firearm.

On May 20, 2005, the Court accepted the plea and sentenced Defendant to the mandatory statutory minimum sentences on both Counts 1 and 2, consistent with the Plea Agreement.   More specifically, the Court sentenced Defendant to the mandatory

minimum term of imprisonment of 20 years on Count 1 and the mandatory minimum and consecutive term of imprisonment of 5 years on Count 2 for a total term of imprisonment of 25 years or 300 months. (Docket Items 26, 27).[7]

Before imposing such sentence, the Court reviewed the relevant facts of the case, including the following:

> In your plea of guilty, Mr. Scott, you did indicate to me that in furtherance of the conspiracy charged in the indictment that beginning in or about January 1991 and to in or about February of 2002, you did distribute marijuana, cocaine, and cocaine base here in the Rochester area. And you also mentioned that you were involved in Syracuse and New York and Louisville, Kentucky, and I believe Indiana. You agree that for purposes of the plea agreement, at least 1.5 kilograms of cocaine base was the amount involved in your relevant conduct that could be proven by the government. And you agreed that cocaine base is crack as defined in Section 2D1.1(c) of the drug quantity table. You further acknowledged and agreed that at various times from November 13th of 1998 through February of 2002, that you did possess a firearm in furtherance of the conspiracy charged in Count 1, and/or willfully aided and abetted others to do so.
>
> This offense appears to represent your third conviction.  Back [o]n September 3rd of 1997, you pled *nolo contendere* to possession of marijuana as a misdemeanor. Subsequently on July 22nd of 2002, you pled to a felony in Monroe County court, criminal possession of a controlled substance in the third degree, and received a sentence of lifetime probation in connection with that charge.

ECF No. 32.

According to the website of the Bureau of Prisons ("BOP"), Defendant is presently

---

[7] A 300-month prison sentence was also the recommended sentence under the Advisory Sentencing Guidelines. *See*, PSR dated May 18, 2005, at p. 9; *see also*, Sentencing Transcript at p. 8 ("Your criminal history category is 1, based on zero criminal history points. With those numbers, that is the criminal history category of 1, and that's the lowest you can have, and that offense level 37, under the now advisory Guidelines, you'd be looking at a minimum of 240 months on Count 1, and that was the agreed upon sentence. That is that 20 years, could be up to life, but that is the agreed upon sentence; and on Count 2 under the Guidelines, the called for sentence would be the statutory minimum of five years.").

housed at Big Spring Federal Correctional Institution ("Big Spring"), a low-security facility with approximately one thousand inmates.   According to U.S. Probation and Pretrial Services ("Probation"), Defendant has a generally-clean prison disciplinary record, though he received an infraction in 2008 for refusing to obey an order.   The BOP website indicates that Defendant's scheduled release date is approximately eighteen months from now, on November 9, 2025.

Defendant is a citizen of Guyana who, as part of his Plea Agreement, agreed that Count 1 of the Indictment was an aggravated felony under the Immigration and Nationality Act, and that his conviction of that charge would make him both inadmissible to, and removable from, the United States.   Defendant further agreed in the Plea Agreement that he waived any right he might have to seek relief from removability, and that he would not contest his immediate removal from the United States after the completion of his prison term.   Consequently, and as discussed by the Court at time of sentencing, it is expected that Defendant will be removed from the United States to Guyana upon his release from prison.[8]

Defendant had no serious health issues at time of sentencing and remains in good health generally.[9]   In that regard, BOP currently designates Defendant as a Medical Care Level 1 Inmate, which refers to inmates who are generally healthy, under 70 years of age, and may have limited medical needs requiring clinician evaluation and monitoring. Defendant has been vaccinated against Covid-19, and he has contracted and recovered

---

[8] Despite the Plea Agreement, Defendant apparently intends to challenge his removal, purportedly based on a "September 30, 2021 Memorandum issued by the Biden Administration." ECF No. 42 at pp. 3, 13; *see also*, ECF No. 44 at p. 2 (Defendant intends to oppose removal).

[9] Evidently, Defendant escaped serious injury when, on January 29, 1991, he jumped from a second story window at 63 Willite Drive in Rochester while attempting to evade police officers who were executing a search warrant at that location. Presentence Investigation Report, ECF No. 28 at p. 5.

from that illness without any serious complications.

On April 18, 2022, Defendant, acting *pro se*, filed the subject motion (ECF No. 42) seeking two forms of relief:   A sentence reduction under Section 404(b) of the First Step Act and "compassionate release" under 18 U.S.C. § 3582(c)(1)(A). [10] Defendant subsequently filed a supplement to his application (ECF No. 44), and his attorney also filed a supplemental memorandum of law (ECF No. 48).

In support of those applications, Defendant primarily relies on the fact that the Fair Sentencing Act ("FSA") reduced the statutory mandatory minimum penalty for conspiring to distribute 50 grams or more of cocaine base, to which he pled guilty as being one of the objects of the conspiracy charged in Count 1 of the Indictment.   Defendant indicates that his conviction under Count 1 is therefore a covered offense under § 404(b) of the First Step Act. ECF No. 42 at pp. 2, 4.   Defendant also argues that such change in the law means that if he were re-sentenced today, his statutory mandatory minimum sentence and advisory guideline range as to Count 1 would be significantly lower.   According to Defendant,

> [i]f [he] was sentenced today, [on Count 1] he would have a statutory mandatory minimum sentence of 120 months and a guideline sentencing range of 135-168 months.  . . .  In this case, a reduction in sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration 180 months longer than Congress now deems warranted for the crimes committed.  . . .  [T]he appropriate sentencing range is 135 to 168 months on the drug charges with a mandatory minimum of 120 months[.]

---

[10] Defendant's counsel maintains that Defendant's earlier *pro se* application for appointment of counsel (ECF No. 35) contained a standalone application for "relief under the Fair Sentencing Act of 2010 and the First Step Act of 2018," see, ECF No. 48 at p. 2, but the Court reads that application as requesting only appointment of counsel for the purpose of determining whether Defendant was entitled to such relief. The distinction has no bearing on the outcome of the Court's decision.

ECF No. 42 at pp. 2, 5, 7.[11]   Defendant also maintains that the § 3553(a) factors weigh in favor of reducing his sentence. ECF No. 42 at p. 2.

As additional factors in support of his request for a sentence reduction under Section 404(b), and as "extraordinary and compelling circumstances" in support of his application for compassionate release, Defendant asserts that his prison sentence is "unusually long"; that he has already served many years in prison; that as a resident alien he does not receive good-time credit toward his sentence; that his prison disciplinary record is generally good; and that he has completed a variety of prison educational courses on topics such as the Bible and horticulture.

Defendant also alleges, notwithstanding his admitted possession of a firearm in furtherance of a drug trafficking conspiracy, that his crimes of conviction were not violent in nature, and that he therefore does not pose a threat to the community if released. Defendant further insists that he "poses no risk of recidivism," since he is now a "changed man."   In that regard, Defendant admits that he made mistakes and blames himself for his commission of crimes, but also feels that he was influenced by his upbringing in poverty and his exposure to violence.[12] Defendant has also submitted a letter of reference from the Assistant Warden of Programs and Inmate Services at McRae Correctional Institution ("McRae"), where he was previously housed.[13]   Defendant states that if he is released from prison and not removed to Guyana, he could live with family members in Brooklyn and obtain employment there.

---

[11] Defendant further states that there has been a "clarification of Section 924(c)'s penalties" since his sentencing, though he does not explain how such clarification pertains to his case.

[12] *See*, ECF No. 44 at p. 2 ("I was programmed to believe that a certain way of life was the only way of life, and I relied on that misconception almost throughout my adult life.").

[13] ECF No. 44 at p. 4.

Defendant also discusses his age and health status, in relation to his concerns about contracting Covid-19 in prison.   More specifically, Defendant indicates that he is age 53 and has "vitamin D deficiency, post-traumatic stress disorder (PTSD), [and] depression,"[14] which he maintains put him at greater risk from Covid-19 in prison.   He also asserts that officials at McRae were "ill-equipped to prevent the spread of Covid-19," and that procedures implemented to prevent the spread of the virus rendered his sentence harsher than it would have been otherwise.   Defendant adds that he is an adherent to the Seventh Day Adventist religion, which initially made him reluctant to accept the Covid-19 vaccine, though he eventually did so.   Despite being vaccinated and in general good health, Defendant asserts that he meets the discretionary factors for discretionary Covid-19-related home confinement set forth in a memo of a former U.S. Attorney General.

Defendant further asserts that the Sentencing Guidelines become advisory rather than mandatory after he was sentenced (he is mistaken about that, since the guidelines were advisory at the time of his sentencing);[15] that Congress may be considering lowering further the penalties for convictions under the drug laws; and that that various jurisdictions have legalized marijuana usage since his sentencing.

The supplemental brief submitted by Defendant's counsel (ECF No. 48) focuses primarily on the application under Section 404(b) of the First Step Act.[16]   The submission maintains, first, that Defendant's conviction under Count 1 is a "covered offense."

---

[14] Defendant also claims that he has a son who is suffering from depression and anxiety.

[15] *See*, Sentencing Transcript at p. 7 ("[T]he sentencing guidelines are no longer mandatory, but rather advisory.").

[16] The submission argues that 18 U.S.C. § 3582(c)(2) "does not apply here," and that insofar as "compassionate release" may be appropriate under § 3582(c)(1)(A), Defendant "has raised the request for compassionate release in his *pro se* motion." ECF No. 48 at p. 6.

Additionally, the submission argues that the Court should exercise its discretion and reduce Defendant's sentence at a plenary re-sentencing, at which the court would apply "current law."   The submission contends, in that regard, that a sentence reduction is warranted "for a variety of reasons," including that Defendant has "taken significant steps at rehabilitation" and has "engaged in spiritual development."

Further, and apparently referring to the fact that Count 1 of the Indictment involved a multi-object conspiracy (possession and distribution of cocaine, cocaine base, and marijuana), Counsel emphasizes that "Congress did not limit the Court's authority to resentence the defendant [for] only the 'covered offense,'" and argues that the Court "should exercise its authority and discretion to resentence on all the drug counts."[17] Counsel, though, does not argue for a particular sentence or explain what she believes would be the Court's specific sentencing options under "current law."   However, Counsel states as follows:

> At resentencing, further consideration must be given to the additional provisions in the First Step Act, namely the statutory changes to the requirements for triggering the enhanced penalties under § 841(b)(1)(B). The Court is now free to exercise its discretion to go below any applicable range, *down to the statutory minimum.*

ECF No. 48 at p. 12 (emphasis added).   Counsel therefore implicitly maintains that Defendant's mandatory minimum sentence would be determined today under § 841(b)(1)(B), and would be lower now than when he was first sentenced, even though, as already discussed, Count 1 involved a conspiracy to distribute not only 50 grams or more of cocaine base, but also "5 kilograms or more" of powder cocaine, the sentence

---

[17] ECF No. 48 at p. 7.

for which is found under § 841(b)(1)(A).

The Government opposes Defendant's applications. *See*, Government's Response (ECF No. 52).   Regarding the application under Section 404(b), the Government agrees with Defendant that his conviction under Count 1 is a covered offense that makes him eligible to request relief. *Id*. at p. 3.   Nevertheless, the Government contends that "Section 404 does not require district courts to conduct a plenary resentencing," and that the Court "should not reduce" Defendant's sentence in any event. On this point, the Government states that based on Defendant's admitted relevant conduct, his sentence would not change even if the Fair Sentencing Act were applied retroactively:

> Even if this court were to impose a sentence as if the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed, the defendant's sentence would remain the same.   The defendant admitted to trafficking over 1.5 kilograms of cocaine base – a number that was then, and is still, well in excess of the threshold amount necessary to trigger the 10 year mandatory minimum sentence.   The government filed, and the defendant admitted, a prior drug felony sufficient to increase the mandatory minimum of Count 1 to 20 years.   As such, an application of the laws as they existed after the enactment of the Fair Sentencing Act of 2010 yields the same result: a sentence of 20 years on Count 1, and 5 years on Count 2, for an aggregate sentence of 300 months.

ECF No. 52 at pp. 11-12.   This is so, the Government argues, even though Count 1 of the Indictment charged Defendant with conspiracy to distribute only 50 grams or more of cocaine base.[18]

Regarding the request for compassionate release, the Government agrees, first,

---

[18]   *See*, ECF No. 52 at p. 3 ("[T]he defendant's plea appears to have been to the 50 grams or more of cocaine base allegation in Count 1[.]").   As discussed below, the Court agrees with the Government's assertion that Defendant's sentence remains the same even under the Fair Sentencing Act, but for reasons other than what the Government has argued.

that Defendant satisfied the exhaustion requirement before filing his application.   The Government also agrees that the Court is authorized "to consider the full slate of extraordinary and compelling reasons" that Defendant might raise in support of his request.   However, the Government maintains that the Court should exercise its discretion and deny the application, since Defendant has not alleged truly extraordinary and compelling reasons.   The Government states, for example, that Defendant's concerns about the possible impact of Covid-19 on his health are not extraordinary or compelling, since he is classified by the BOP at the lowest risk level for health problems, he has been vaccinated against Covid-19.

Alternatively, the Government maintains that the § 3553(a) factors "weigh heavily" against Defendant, since "the nature and circumstances of the defendant's crimes are very serious," in that they involve a conspiracy to distribute 1.5 kilograms of crack cocaine and the possession of a firearm in furtherance of the conspiracy. *See*, ECF No. 52 at p. 12 ("This sentence [the existing sentence] is sufficient but not greater than necessary to account for the seriousness of the defendant's conduct: years of conduct trafficking a significant amount of a dangerous drug while armed with a deadly weapon.").   The Government asserts that reduction of Defendant's sentence would "seriously undermine the fairness and purpose of the original sentence," even though Defendant's "efforts at rehabilitating himself are laudable and should continue."[19]

Defendant submitted a *pro se* reply (ECF No. 54) that primarily focuses on the "compassionate release" aspect of his applications. In that regard, Defendant reiterates

---

[19] ECF No. 52 at pp. 9-10.

the factors already discussed, such as his "age, health and rehabilitation,"[20] and emphasizes that courts have wide discretion in what they can consider on such a motion.

The Court has carefully considered the parties' submissions and the entire record.

DISCUSSION

The Court Construes Defendant's *Pro Se* Submissions Liberally

The Court treats Defendant's motions, for a sentence reduction and for compassionate release, as consisting of Docket Numbers 42, 44, 48 and 54.   Of those, only Docket number 48 was prepared and submitted by Defendant's counsel, while the rest were prepared and submitted by Defendant acting *pro se*.   It is of course well-settled that courts must construe *pro se* submissions liberally to raise the strongest arguments that they suggest, and the Court has done so here with regard to Docket Nos. 42, 44, and 54.

Defendant's Conviction on Count 1 is a Covered Offense Under
Section 404(b) of the First Step Act, But He is Ineligible for a Reduction
Since the Sentence Imposed was the Statutory Mandatory Minimum for the
Non-Crack-Cocaine Object of the Conspiracy

Defendant maintains that he is eligible for relief under § 404(b) of the First Step Act since his conviction under Count 1 is a covered offense, and "if he was sentenced today he would have a statutory mandatory minimum sentence of 120 months and a guideline sentencing range of 135-168 months."   In that regard, Defendant points out, *inter alia*, that the quantity warranting a ten-year mandatory minimum sentence for the distribution of cocaine base (crack) was increased under the Fair Sentencing Act from 50 grams, the amount charged in Count 1, to 280 grams.   The Government agrees that

---

[20] ECF No. 54 at p. 10.

Defendant is eligible for a sentence reduction under Section 404(b), but argues that the Court should not grant one.   However, the Court finds that while Defendant's conviction under Count 1 is a covered offense, he is not eligible for a sentence reduction under Section 404(b) since he already received the statutory minimum sentence that would apply even under the Fair Sentencing Act.

The Court notes, preliminarily, that the general legal principles concerning Section 404(b) of the First Step Act are clear:

> In 2018, Congress passed the First Step Act, which made Sections 2 and 3 of the Fair Sentencing Act of 2010 retroactive.[21] *See* Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). Section 2 of the Fair Sentencing Act increased the quantity of crack cocaine that triggers the ten-year mandatory minimum sentence in 21 U.S.C. § 841(b)(1)(A) from 50 grams to 280 grams and increased the quantity of crack that triggers the five-year mandatory minimum sentence in 21 U.S.C. § 841(b)(1)(B) from 5 grams to 28 grams. *See* Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010). Section 404(b) of the First Step Act provides that a court 'that imposed a sentence for a covered offense may ... impose a reduced sentence as if sections 2 and 3 ... were in effect at the time the covered offense was committed.' *See* § 404(b), 132 Stat, at 5222. (Emphasis added.) A 'covered offense' is defined as 'a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act' and 'that was

---

[21] *See, United States v. Johnson*, 732 F.3d 109, 112 (2d Cir. 2013) ("On August 3, 2010, the FSA took effect, reducing the mandatory minimum sentences for crack cocaine offenses and reducing the disparity between the penalties for cocaine base and powder cocaine offenses. The reduction was accomplished by raising the quantities of cocaine base required for various mandatory minimum sentences. For example, the FSA raised the minimum quantity of cocaine base requiring a ten-year minimum sentence from 50 grams to 280 grams, thereby making offenses [involving less than 280 grams] subject to a five-year minimum sentence. *See* Pub.L. 111–220, 124 Stat. 2372, § 2(a)(1), (2), codified at 21 U.S.C. § 841(b)(1)(B)(iii). The Sentencing Commission subsequently promulgated amendments to the Guidelines to reduce base offense levels to conform to the new statutory minimums for cocaine base offenses. [For example,] the Commission reduced the base offense level for 150 grams of cocaine base from 32 to 28. *See* U.S.S.G.App. C., Amend. 748, third paragraph4 (effective Nov. 1, 2010) (promulgating temporary, emergency reductions); U.S.S.G.App. C., Amend. 750, first paragraph (effective Nov. 1, 2011) (repromulgating reductions as permanent). The Commission then amended U.S.S.G. § 1B1.10(c) to provide that portions of Amendment 750 . . . applied retroactively. See U.S.S.G.App. C., Amend. 759, second paragraph (effective Nov. 1, 2011).").

committed before August 3, 2010.' *Id*. § 404(a), 132 Stat. at 5222.").

*United States v. Lang*, No. 02-CR-1444 (SHS), 2022 WL 17819518, at *1 (S.D.N.Y. Dec. 20, 2022).   Accordingly, Defendant's conviction under Count 1 is a covered offense, since it involved a conspiracy to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A), which at that time (2005) triggered a ten-year mandatory minimum sentence.

The Second Circuit has indicated that such a conspiracy is a "covered offense" under Section 404(b) even though it had other objects, besides the possession and distribution of crack cocaine, which triggered statutory penalties that were not changed by the Fair Sentencing Act. *See*, *U.S. v. Reed*, 7 F.4th 105, 110 (2d Cir. 2021) ("*Reed*") ("[W]e hold that a sentence arising from a multi-object conspiracy conviction involving a crack cocaine object, with a statutory penalty provision under 21 U.S.C. § 841(b)(1)(A)(iii) or 21 U.S.C. § 841(b)(1)(B)(iii), is a 'covered offense' under Section 404 that is eligible for a sentencing reduction, even when the other objects of the conspiracy (involving different controlled substances) triggered statutory penalties that were not modified and thus the applicable minimum and maximum penalties for the conspiracy offense remain unchanged.").

Having re-calculated Defendant's sentencing range on Count 1 under the Advisory Sentencing Guidelines as if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the covered offense was committed, the Court finds, based on Defendant's stipulation in the Plea Agreement to at least 1.5 kilos of crack cocaine, that his base

offense level is 32 (rather than 38 as originally calculated at sentencing);[22] that there should still be a 2-level increase for his role as an organizer or leader; and that there should still be a 3-level decrease for acceptance of responsibility, resulting in an offense level of 31, which, with a Criminal History Category of I, results in a guideline range of 108-135 months.[23] However, pursuant to Guideline § 5G1.1(b), that range is adjusted upward to 240 months because that is the statutory mandatory minimum sentence for the powder cocaine.   This is the same result for Count 1 that the Court calculated at time of sentencing.   Consequently, Defendant's Guideline Range is not reduced by the Fair Sentencing Act.

Additionally, the Second Circuit has stated that a district court may not grant a reduction under Section 404(b) if the sentence imposed for conviction of the multi-object conspiracy was the statutory mandatory minimum for the non-crack-cocaine objects of the conspiracy.   The Circuit Court discussed this point in *Reed*, distinguishing its prior decision in *U.S. v. Echeverry*, 978 F.3d 857 (2d Cir. 2020) ("*Echeverry*") and stating:

> The government initially contended that our decision in *United States v. Echeverry*, 978 F.3d 857 (2d Cir. 2020), supports its view that Jordan's multi-object conspiracy conviction is not eligible for a sentence reduction under Section 404. As the government now concedes, however, *Echeverry* is distinguishable on its facts and has no application here. Like Jordan, Echeverry was convicted on a conspiracy charge with multiple objects, including a crack cocaine object and two other non-crack cocaine objects (powder cocaine and heroin). *Id*. at 858–59. However, unlike the instant case, the district court originally sentenced Echeverry to the mandatory minimum sentence required by his two non-crack cocaine objects. *Id*. at 859.

---

[22] Per U.S.S.G. § 2D1.1(c)(4) (Setting a base offense level of 32 for "at least 840 G but less than 2.8KG of cocaine base.").   The base offense level of 38 was previously determined under U.S.S.G. § 2D1.1(c)(1).

[23] At time of sentencing, the range for Count 1 at this non-final stage of the calculation was 210-262 months.

> Under these circumstances, we held that because "[t]he First Step Act permits a district court to reduce a sentence only to the extent that the sentence could have been lower if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the covered offense was committed," Echeverry was "ineligible for First Step Act relief." *Id*. (alteration and internal quotation marks omitted); *accord Winters*, 986 F.3d at 951 ("A district court lacks authority to reduce a sentence that is already at the statutory floor. Section 404(b) does not provide discretion for resentencing if the movant's current sentence is the statutory minimum penalty under the Fair Sentencing Act. A sentence shorter than the statutory minimum could not be imposed 'as if' the Fair Sentencing Act was in effect."); *Jones*, 962 F.3d at 1303 ("If the movant's sentence would have necessarily remained the same had the Fair Sentencing Act been in effect, then the district court lacks the authority to reduce the movant's sentence. Any reduction the district court would grant would not be 'as if' the Fair Sentencing Act had been in effect. That is, the First Step Act does not permit a reduction when the Fair Sentencing Act could not have benefitted the movant.").
>
> As described above, the crucial distinction between *Echeverry* and our case is that, whereas Echeverry's sentence was already at the statutory mandatory minimum for his non-crack cocaine objects and his sentence could not be reduced regardless of the Fair Sentencing Act's modifications to crack cocaine penalties, Jordan's sentence, at 254 months' imprisonment, is 14 months above the statutory minimum for his non-crack cocaine object and can be reduced. Therefore, even under *Echeverry*, Jordan's overall sentence for his multi-object conspiracy offense is eligible for reduction under Section 404 because it "could have been lower if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the covered offense was committed." *Echeverry*, 978 F.3d at 859 (internal citations omitted).

*Reed*, 7 F.4th at 115–16 (emphasis added); *see also, United States v. Echeverry*, 978 F.3d 857, 859 (2d Cir. 2020) ("Because count one of the superseding information charged two non-crack-cocaine offenses that each carried a mandatory minimum sentence of 120 months' imprisonment, Echeverry is ineligible for First Step Act relief."); *U.S. v. Clowers*, 62 F.4th 1377, 1378 (11th Cir. 2023) ("If the defendant is already serving the statutory

minimum sentence that would have applied under the Fair Sentencing Act, the First Step Act offers no relief."); *United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020) ("Of course, statutory mandatory minimum terms remain in effect for certain drug offenses. Even if a defendant's sentence involves a covered offense, the district court's review of a defendant's First Step Act motion cannot avoid those statutory requirements."); *United States v. Hurdle*, No. 7:08-CR-18-2, 2020 WL 4370153, at *4 (W.D. Va. July 30, 2020) ("Because the 120-month mandatory minimum sentence on the powder cocaine charge and the mandatory consecutive sentence on the firearm are unchanged, the court cannot modify Hurdle's sentence.").

Here, Defendant pleaded guilty to conspiracy to distribute not only 50 grams or more of crack cocaine, but also 5 kilograms or more of cocaine and 50 kilograms or more of marijuana.   The statutory mandatory minimum sentence for a violation of 21 U.S.C. § 841(b)(1)(A) involving 5 kilograms or more of cocaine was ten years, which, due to Defendant's prior felony drug offense and § 851, became 20 years, the sentence the Court imposed on Count 1.[24]   Since Defendant's sentence was already at the statutory mandatory minimum for this non-crack cocaine object of the conspiracy, his sentence cannot be reduced regardless of the Fair Sentencing Act's modifications to crack cocaine penalties.

---

[24] *Cf., U.S. v. Spencer*, No. CR071742JRTJJG, 2021 WL 6011072, at *4 (D. Minn. Dec. 20, 2021) ("In addition to being convicted of 50 grams or more of crack cocaine, the jury also found in the same count that the drug quantity involved 5 kilograms or more of powder cocaine. (Jury Verdict at 1.) Sections 2 and 3 of the Fair Sentencing Act did not affect powder cocaine. Because 5 kilograms were sufficient to trigger the § 841(b)(1)(A) penalties when Spencer was sentenced, the 20-year mandatory minimum still applies. *See* 21 U.S.C. § 841(b)(1)(A) (2006).") (footnote omitted), *aff'd*, No. 22-1026, 2022 WL 903460 (8th Cir. Mar. 17, 2022), *cert. denied*, 142 S. Ct. 2757, 213 L. Ed. 2d 1001 (2022), *reh'g denied*, 143 S. Ct. 65, 213 L. Ed. 2d 1147 (2022) (As in the instant case, the defendant in *Spencer* had a prior felony drug conviction that resulted in a 20-year mandatory minimum sentence).

In any event, even assuming that Defendant was otherwise eligible for a reduction of his sentence under Section 404(b), the Court would, in the exercise of its discretion, deny the request, since it does not find that a sentence reduction is warranted in light of all the facts and circumstances surrounding Defendant's conviction, as set forth in the Presentence Investigation Report (ECF No. 28),[25] and after consideration of the § 3553(a) factors, as discussed further below in the section of this Decision and Order addressing Defendant's compassionate release motion. *See, U.S. v. Reed*, 7 F.4th at 117 ("[O]f course, the First Step Act does not require a court to reduce any sentence pursuant to this section in cases where it does not believe that the original sentence involving a defendant's crack cocaine offense warrants a reduction.") (citation omitted); *see also, United States v. Ramirez*, No. 13-CR-135 (RJS), 2022 WL 2703596, at *20 (S.D.N.Y. July 11, 2022) ("The First Step Act makes clear that even if a defendant is eligible for a sentence reduction, the court has discretion to grant or deny the reduction. §§ 404(a), 404(b).").   Defendant's application under § 404(b) is therefore denied.

<u>The Court Also Denies Defendant's Motion for Compassionate Release</u>

Defendant has also moved for "compassionate release" under 18 U.S.C. § 3582(c)(1)(A)(i).[26]   The legal principles applicable to such an application are clear:

> "A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Applewhite*, No. 17-CR-142 (MKB), 2020 WL 7356615, at *3 (E.D.N.Y. Dec. 15, 2020) (quoting *United*

---

[25] This includes the fact, discussed elsewhere herein, that while Count 1 charged Defendant with, *inter alia*, conspiracy to possess, with intent to distribute, and to distribute, only 50 grams or more of a mixture and substance containing cocaine base, it is undisputed that the Government could have proven that the actual amount of cocaine base involved was "at least 1.5 kilograms." Plea Agreement at p. 5.

[26] "It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place. *Id*." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

*States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). One such statutory exception is provided in 18 U.S.C. § 3582, the vehicle for defendants seeking "compassionate release" from sentences.   Originally, only the BOP could act on a motion for relief under this section, exercising "absolute control over th[e] mechanism for lenity[.]" *Brooker*, 976 F.3d at 231. However, the First Step Act modified § 3582 to permit a district court to modify a defendant's sentence if the defendant could show that (1) he or she has satisfied the statutory exhaustion requirement, (2) extraordinary and compelling reasons exist warranting a sentence reduction, and (3) a sentence reduction is appropriate "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," so long as "extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582 (c)(1)(A). It is defendant's burden to show he is entitled to a sentence reduction. *See United States v. Lugo*, No. 01-CR-922 (NG), 2022 WL 732153, at * 7 (E.D.N.Y. Mar. 11, 2022).

When considering a motion for compassionate release, the First Step Act "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in [such] motions." *Brooker*, 976 F.3d at 237 (finding that "[b]ecause [Sentencing] Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"); *see also United States v. Haynes*, 456 F. Supp. 3d 496, 514 (E.D.N.Y. 2020) (the district court has the authority to "determine what 'Other Reasons' (as that term is used in Application Note 1(D)) qualify as 'extraordinary and compelling' regardless of the BOP's view on the matter and without having to await a someday-updating by the Commission of its unquestionably outdated policy statement"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.'" *Brooker*, 976 F.3d at 237-38 (quoting 28 U.S.C. § 994(t) (emphasis added)).

Upon finding that a defendant has demonstrated the existence of extraordinary and compelling reasons for a reduction, the Court must then consider the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Fernandez*, 853 F. App'x 730, 732 (2d Cir. 2021) (summary order) ("Even if

'extraordinary and compelling' circumstances exist, a district court must also consider 'the factors set forth in section 3553(a) to the extent that they are applicable' before granting a sentence reduction.") (quoting § 3582(c)(1)(A)); *United States v. Schwarzkopf*, No. 21-CR-117 (EK), 2022 WL 706508, at *1 (E.D.N.Y. Mar. 9, 2022) (a showing of extraordinary and compelling reasons "renders [a defendant] eligible for, but not entitled to, a sentence reduction; the court must still consider the Section 3553(a) factors anew"). Among the relevant factors to be considered in deciding a motion for compassionate release are: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;" (4) to provide deterrence; (5) to protect the public from the defendant; (6) to rehabilitate the defendant; and (7) the need to avoid unwarranted sentencing disparities. *United States v. Russo*, 643 F. Supp. 3d 325, 335 (E.D.N.Y. 2022) (citing § 3553(a)). While the factors should be considered by the court, it is not required to "discuss every § 3553(a) factor individually." *United States v. Keitt*, 21 F.4th 67, 72 (2d Cir. 2021) (citation omitted).

*United States v. Freeman*, No. 96-CR-527 (PKC), 2023 WL 6517466, at *3–4 (E.D.N.Y. Oct. 5, 2023) (footnote omitted).

The Court has considered all non-frivolous arguments Defendant has raised in support of his application, and has not declined to consider any of the factors he cites in his papers.   Nevertheless, the Court does not find that those factors, either singly or in combination, amount to extraordinary and compelling reasons to modify Defendant's sentence.

For example, Defendant argues that he is in danger in prison from Covid-19 due to his age and health conditions.   However, the Court does not find those arguments persuasive, since Defendant is in good health, has received the Covid-19 vaccine, and has already recovered from the illness.

The Court has also considered the fact that, as discussed earlier, since Defendant

22

was sentenced, the Fair Sentencing Act increased the threshold amount of crack cocaine required to trigger a 10-year mandatory minimum sentence under Section 841(b)(1)(A)(iii), from 50 to 280 grams.   However, the Court does not find that to be an extraordinary and compelling reason to reduce Defendant's sentence, since, again, it is undisputed that his actual conduct involved at least 1.5 kilograms of crack cocaine. Additionally, § 841(b)(1)(A)(ii)(II) still provides a 10-year mandatory minimum for offenses involving 5 kilograms or more of powder cocaine.

The Court has considered the fact that the Advisory Sentencing Guidelines have been amended since Defendant's sentencing.   Based on such changes, and as discussed earlier, using Defendant's admission to at least 1.5 kilos of cocaine base, his base offense level today would be 32 rather than 38, which, when combined with a Criminal History Category of I, results in a guideline range of 108-135 months.   However, pursuant to § 5G1.1(b), that range is adjusted upward to 240 months because of the statutory mandatory minimum sentence for the powder cocaine.   Consequently, despite the changes to the Guidelines since Defendant's sentencing, his guideline range under Count 1 remains 240 months, and his overall guideline range for Counts 1 and 2 remains 300 months.   Accordingly, the Court does not find that such changes to the Sentencing Guidelines amount to an extraordinary and compelling reason to modify Defendant's sentence.

The Court has also considered that the 240-month mandatory minimum on Count 1 resulted from Defendant's prior drug felony conviction, and that since Defendant's sentencing, the law has changed, such that this prior conviction would not presently trigger a 20-year sentence.   In particular, the Court is referring to Section 401 of the First

Step Act, which

> raised the level of drug felony predicates required to statutorily enhance a sentence for certain violations of the Controlled Substances Act. After the First Step Act, the sentence for a violation of 21 U.S.C. § 841(b)(1)(B) can be statutorily enhanced based upon a prior *serious drug felony* conviction.

*United States v. Alexander*, No. CR 3:14-604-JFA, 2022 WL 17671890, at *4–5 (D.S.C. Dec. 14, 2022) (emphasis added, footnote omitted).   A "serious drug felony" "includes state convictions involving distribution or manufacturing of controlled substances for which a defendant faced a maximum term of 10 years or more imprisonment, actually served more than 12 months imprisonment, and was released from that term of imprisonment within 15 years of engaging in the instant offense." *Id*. at *4, n. 7.

Defendant's prior drug felony conviction was for Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.16, a Class B felony which at the time carried a maximum prison sentence of 25 years, though New York subsequently lowered that maximum to 9 years.   However, Defendant did not receive any sentence of imprisonment for that conviction, but, rather, was sentenced to lifetime probation. See, PSR at p. 8.   Consequently, that conviction would not presently qualify as a "serious drug felony," meaning that, under today's law, Defendant's mandatory minimum sentence on Count 1 would be ten years, not twenty.

Section 401 of the First Step Act does not apply retroactively to Defendant.[27]

---

[27] *See, United States v. Iverson*, No. 22-1612, 2023 WL 8825136, at *1 (2d Cir. Dec. 21, 2023) ("[S]ection 401 amended 21 U.S.C. § 841 to provide that certain mandatory sentencing enhancements are triggered only when a defendant has a prior conviction for a serious drug felony, as opposed to any drug felony. See First Step Act, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220–21 (2018). Section 401 explicitly provides, however, that those amendments only apply to offenses committed before the date of the Act's enactment "if a sentence for the offense has not been imposed as of such date of enactment." § 401(c), 132 Stat. at 5221 (emphasis added).").

However, some district courts in this Circuit have concluded that they may consider whether non-retroactive changes to the law amount to extraordinary and compelling circumstances in particular cases when deciding compassionate release motions.[28] Additionally, a policy statement by the U.S. Sentencing Commission, effective November 1, 2023, U.S.S.G. § 1B1.13, indicates that non-retroactive changes in the law may amount to extraordinary and compelling reasons to reduce a sentence for certain defendants serving "unusually long sentences":

> **Unusually Long Sentence**.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (West 2024).   Put differently, the policy statement

> provides that changes in the law are not be considered for purposes of determining whether extraordinary and compelling circumstances exist

---

[28] *See, e.g., United States v. Gigliotti*, No. 15 CR 204, 2023 WL 5522105, at *2 E.D.N.Y. Aug. 18, 2023 ("[T]he Congressional decision not to make a sentencing change retroactive, while sparing courts the avalanche of applications and re-sentencings, does not act as a per se bar to considering the effect of that change, in an individual defendant's case, as part of the 'extraordinary and compelling' equation for § 3582(c)(1)(A)(i) purposes. *See United States v. Kevin Haynes*, 456 F.Supp.3d 496, 516 (E.D.N.Y. 2020) (collecting authorities so holding). Indeed, although the Second Circuit has not squarely held, as have some other Circuits, that a non-retroactive change in the law may be considered for compassionate release purposes, I read the Second Circuit's 'full slate' standard (announced in *Brooker* only several months after I issued *Haynes*) as encompassing such legislative events. *See also Concepcion v. United States* —— U.S. ——, 142 S. Ct. 2389, 2403, 2402, 213 L.Ed.2d 731 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act," recognizing that subsequently updated laws are "evidence of society's judgment of the seriousness of an offense") (cleaned up)"); *see also, id.* at n. 3 ("Mindful that *Concepcion* involved motions under Section 404 rather than the First Step Act generally, I find that the principles it announces about resentencing plainly echo those emphasized by the Second Circuit in *Brooker* when discussing a district court's sentencing discretion under the compassionate release statute.").

(although they may be considered in determining the extent of a reduction if the movant otherwise establishes such circumstances), unless a defendant has served ten years of an unusually long sentence that a change in the law (other than a Guidelines amendment that has not been made retroactive) renders grossly disparate compared to what would be imposed today.

*United States v. Glover*, No. 11-CR-629-3 (CS), 2024 WL 1892796, at *1 (S.D.N.Y. Apr. 30, 2024).

Here, Defendant has been in prison for more than ten years.   Consequently, the remaining questions for the Court, under U.S.S.G. 1B1.13(b)(6), are whether Defendant's sentence is "unusually long," and whether Section 401 of the First Step Act produces a "gross disparity" between the sentence Defendant received and the sentence he would receive if he were sentenced today.

As for the first of these questions,[29] Guideline § 1B1.13(b)(6) does not define the term "unusually long sentence."   Importantly, however, the text of the section logically implies that the "unusual length" of the sentence must have resulted from the feature of the law that was subsequently changed and not made retroactive.   In this case, that would be the doubling of the statutory mandatory minimum from ten years to twenty years, based on Defendant's prior felony drug conviction, which would not presently qualify as a "serious drug felony."   Here, though, the length of the sentence imposed on Count 1 was not necessarily the result of such conviction or such doubling of the statutory mandatory minimum.   Specifically, for Defendant's conviction under Count 1, the

---

[29] In considering this first question, the Court does not consider the portion of Defendant's prison sentence representing the mandatory consecutive sixty-month sentence that he received under Count 2 for his § 924(c) conviction, since there has been no change in the law since his sentencing affecting that aspect of the sentence.

recommended Guideline range for that offense at the time of sentencing, *without regard to the 851 Information or the prior felony drug conviction*, was 210 months to 262 months.[30]   That guideline range was driven primarily by the quantity of drugs involved, and not by Defendant's Criminal History Category, which was Category I. [31] Consequently, at the time of sentencing, the 240-month sentence imposed on Count 1 was *not* an "unusually long sentence" for an individual such as Defendant who admittedly trafficked in at least 1.5 kilos of cocaine base, even without considering his prior drug felony conviction.   Indeed, when calculating Defendant's guideline sentencing range, consideration of his prior drug felony conviction, and of the 20-year statutory mandatory minimum that resulted from the filing of the Section 851 Information, resulted in a *lowering* of the high end of that guideline range to 240 months, which is the sentence the Court imposed on Count 1 pursuant to the parties' agreement.[32]   Since the sentence imposed was in the middle of the recommended guideline range even without regard to the prior drug felony conviction, the Court does not find that Defendant's sentence on Count 1 was an "unusually long sentence" that resulted from consideration of his prior drug felony conviction.

In any event, even assuming *arguendo* that Defendant could show that his sentence was unusually long, he has not shown that the non-retroactive change in the law upon which he relies renders his sentence on Count 1 "grossly disparate" compared

---

[30] *See*, PSR, ECF No. 28 at p. 9.
[31] *See*, PSR, ECF No. 28 at p. 9.
[32] *See*, PSR, ECF No. 28 at p. 9, ¶ 41 (Based on a total offense level of 37 and a criminal history category of I, the guideline range for imprisonment is 210 to 262 months.   Pursuant to U.S.S.G. § 5G1.1(b), the statutorily required minimum sentence of 20 years (240 months) shall be the guideline sentence.").

to the sentence that he would receive today.   In that regard, it may be true that if Defendant were resentenced today on Count 1, he would not be subject to the 20-year mandatory minimum that was triggered by his prior felony drug conviction.   However, Defendant's argument, that the imposed sentence is therefore "grossly disparate" to what he would receive today, assumes, as its lynchpin, that the Government would have agreed to offer him a plea to the same charges, and to drop the other two charges in the indictment, under the current statutory regime.   However, there is no reason to assume that the Government would have agreed to such a plea if it would have resulted in Defendant receiving an aggregate sentence of less than 25 years, particularly since resolution of the four-count Indictment against Defendant was by way of an 11(c)(1)(C) Plea Agreement that specifically required an aggregate prison sentence of 300 months. *See, United States v. Jackson*, No. 96-CR-515 (LAP), 2023 WL 6038013, at *3 (S.D.N.Y. Sept. 15, 2023) ("Jackson's argument assumes that the Government would have agreed to offer [him] a plea to the same charges – and to drop the charges of murder in aid of racketeering that carried a mandatory life sentence – under the current statutory regime. However, there is no reason to assume that the Government would have agreed to drop the most serious charges against Jackson if doing so meant that he would receive a lesser sentence than the 35-year sentence actually imposed.   Jackson's assumption that the Government would offer the same plea even if [he] might receive a lower sentence is especially unfounded in this case, where the parties stipulated to a sentence of 35 years imprisonment in the plea agreement.") (citations omitted).[33]   Indeed, based on the

---

[33] *See also, United States v. Glover*, No. 11-CR-629-3 (CS), 2024 WL 1892796, at *2 (S.D.N.Y. Apr. 30, 2024) ("[T]here is no reason to believe the Government would have offered Defendant a plea to anything less than a fifteen-year mandatory minimum. Defendant's original charges were for a drug charge under

Court's experience in such cases, and considering the facts of this case, including the quantity of drugs involved and the Government's contention, based on sworn testimony given during the trial of Anthony Murphy, that Defendant participated in the robbery and murder of Lamont Gordon, the Court finds it highly unlikely that the Government would agree to an aggregate sentence of less than 300 months under the current statutory regime.   Indeed, if Defendant had turned down the plea offer that he eventually accepted, the Government was prepared to proceed to a trial, after which Defendant, if he had been convicted of all counts, would likely have had a guideline sentence recommendation of life imprisonment.   Accordingly, Defendant has not shown that Section 401 of the First Step Act provides an extraordinary and compelling reason to reduce his sentence under Guideline § 1B1.13(b)(6).

Defendant also maintains that changes to the law concerning the stacking of multiple § 924(c) counts is an extraordinary and compelling reason to grant his application.   Defendant is of course correct that the law in that regard has changed since he was sentenced. *See, e.g., Felder v. United States*, No. 22 CV 9926 (VB), 2023 WL 4684492, at *3 (S.D.N.Y. July 21, 2023) ("[T] he First Step Act of 2018 ("FSA") . . . eliminated the so-called "stacking" provision of Section 924(c). Prior to the FSA, a second

---

21 U.S.C. § 841(b)(1)(A) carrying a ten-year mandatory minimum, which would have been twenty based on the PFI, and a gun-discharge charge under 18 U.S.C. § 924(c)(1)(A)(iii) carrying a ten-year mandatory consecutive sentence. The Government came off that thirty-year mandatory minimum, allowing Defendant to plead to a drug charge under 21 U.S.C. § 841(b)(1)(B) carrying a five-year mandatory minimum, doubled to ten, and a gun-possession charge under 18 U.S.C. § 924(c)(1)(A)(i) carrying a five-year mandatory consecutive sentence. If Defendant were prosecuted today, the Government could have achieved the same fifteen-year mandatory minimum without a PFI, by sticking with the ten-year drug charge and reducing only the gun charge. Defendant has not shown that there is a gross disparity between the sentence Defendant received and what he would receive today.").

Section 924(c) conviction either arising out of the same incident or otherwise not final carried a 25-year mandatory minimum. The FSA amended the statute such that the 25-year mandatory minimum now applies only after a prior Section 924(c) conviction has become final. See Pub. L. 115-391, Title IV, § 403(a), Dec. 21, 2018, 132 Stat. 5221-22 ("Section 924(c)(1)(C) ... is amended, in the matter preceding clause (i), by striking 'second or subsequent conviction under this subsection' and inserting 'violation of this subsection that occurs after a prior conviction under this subsection has become final.' ")"). That change does not apply retroactively, but the Court may nevertheless consider such non-retroactive developments when deciding Defendant's application. *See, e.g., United States v. Watts*, No. 92-CR-767 (KAM), 2023 WL 35029, at *6 (E.D.N.Y. Jan. 4, 2023) ("Importantly, Section 403 of the First Step Act does not explicitly provide for, nor prohibit, retroactive application and does not provide any automatic or independent relief for those defendants whose sentences involved the stacking of § 924(c) convictions. Instead, a defendant may apply to the district court for any such sentence modification relief under 18 U.S.C. § 3582(c)(1)(A).") (collecting cases).[34]   However, the Court does

---

[34] *See also, United States v. Gigliotti*, No. 15 CR 204, 2023 WL 5522105, at *2 E.D.N.Y. Aug. 18, 2023 ("[T] he Congressional decision not to make a sentencing change retroactive, while sparing courts the avalanche of applications and re-sentencings, does not act as a per se bar to considering the effect of that change, in an individual defendant's case, as part of the 'extraordinary and compelling' equation for § 3582(c)(1)(A)(i) purposes. *See United States v. Kevin Haynes*, 456 F.Supp.3d 496, 516 (E.D.N.Y. 2020) (collecting authorities so holding). Indeed, although the Second Circuit has not squarely held, as have some other Circuits, that a non-retroactive change in the law may be considered for compassionate release purposes, I read the Second Circuit's 'full slate' standard (announced in *Brooker* only several months after I issued *Haynes*) as encompassing such legislative events. *See also Concepcion v. [U.S.],* –– U.S. ––, 142 S. Ct. 2389, 2403, 2402, 213 L.Ed.2d 731 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act," recognizing that subsequently updated laws are "evidence of society's judgment of the seriousness of an offense") (cleaned up)"; *see also, id.* at n. 3 ("Mindful that *Concepcion* involved motions under Section 404 rather than the First Step Act generally, I find that the principles it announces about resentencing plainly echo those emphasized by the Second Circuit in *Brooker* when discussing a district court's sentencing discretion under the compassionate release statute.").

not find this change in the law to be an extraordinary and compelling reason to reduce

Defendant's sentence, since he was not convicted of multiple 924(c) counts.   The fact

that Defendant was facing multiple 924(c) counts when he decided to plead guilty may

have played a role in that decision (he does argue that it influenced his decision, but

merely points out that the law has changed),[35] but the Court does not find that to be,

either on its own or in conjunction with the other factors he cites, an extraordinary and

compelling reason to reduce his sentence.[36]

Furthermore, even assuming that Defendant had demonstrated extraordinary and

compelling reasons to reduce his sentence, which he has not done, the Court would

nevertheless decline to grant a reduction based upon its consideration of the Section

3553(a) factors, especially § 3553(a)(1),(2) & (6).   In that regard, the Court notes that

Defendant has already served most of his sentence.   Nevertheless, the Court finds that

---

[35] *See, United States v. Potter*, No. 3:09-CR-138-TAV-HBG, 2021 WL 3276152, at *3 (E.D. Tenn. July 30, 2021) ("[D]efendant's sentence for his violation of § 924(c) was the result of the terms of the plea agreement which he voluntarily agreed to, not § 924(c) stacking.   Which is not to say that § 924(c) stacking did not likely play some role in defendant's decision to accept the plea agreement."). Defendant was charged with two counts under § 924(c), one of which was dismissed pursuant to his plea agreement. If defendant had proceeded to trial and been convicted on both of the § 924(c) counts, he would have faced an additional 25-year mandatory minimum consecutive sentence for the second § 924(c) violation. *See* 18 U.S.C. § 924 (pre-First Step Act). To the extent that this potential 25-year sentence played some role in defendant's decision to plead guilty, the Court will address defendant's § 924(c) argument.").

[36] Defendant has made a number of other arguments that are also either incorrect or unpersuasive.   For example, his contention that the Sentencing Guidelines were not advisory at the time of his sentencing is simply incorrect, while his contention that the Court should consider the relaxation of marijuana laws to be an "extraordinary and compelling" reason to modify his sentence is just not persuasive. See, e.g., United States v. Gigliotti, No. 15 CR 204 (RJD), 2023 WL 5522105, at *3, n. 4 (E.D.N.Y. Aug. 18, 2023) ("To be clear, in granting relief I have not accepted the totality of the arguments on 'extraordinary and compelling' presented in Mr. Gigliotti's motion. For example, he emphasizes that the prior conviction triggering the recidivist statute was an offense involving marijuana, and points to the trend toward decriminalization at the state level and the proposal to do the same at the federal level.   . . .   Even accepting that society's views about recreational use of small quantities of marijuana have changed, however, Mr. Gigliotti's crime was a large-scale commercial operation from which agents seized more than 100 kilograms of the controlled substance.").   Also unpersuasive is Defendant's assertion that he poses no risk of recidivism since his crimes were non-violent in nature, inasmuch as he admittedly possessed a firearm in furtherance of a drug trafficking conspiracy.

the sentence imposed is warranted, considering the serious nature of Defendant's crimes, that involved his leadership role in a long-running, large-scale narcotics distribution operation and his possession of a firearm in furtherance thereof, committed while he was on probation for a prior drug felony conviction.   Additionally, the Court finds that reduction of Defendant's sentence, which had been agreed to in the 11(c)(1)(C) Plea Agreement, would undermine the purpose of the original sentence. *See, e.g., United States v. Dunnigan*, 605 F. Supp. 3d 487, 493 (W.D.N.Y. 2022) ("To now reduce Defendant's agreed-upon Rule 11(c)(1)(C) sentence . . . would significantly undermine the purposes of the original sentence, in view of the factors set forth at 18 U.S.C. § 3553(a). *See United States v. Roney*, 833 F. Appx 850, 854 (2d Cir. 2020) ("[C]ourts regularly consider whether compassionate release would be consistent with § 3553(a) by considering how early release would impact the aims of the original sentence.").");  *see also, United States v. Bardesis*, No. CR-18-00032-001-RAW, 2021 WL 1377978, at *2 (E.D. Okla. Apr. 12, 2021) ("Pursuant to Fed. R. Crim. P. 11(c)(1)(C), defendant agreed to a sentence of 96 months' imprisonment on Count 1 in exchange for the government's agreement to dismiss the firearm count at sentencing. Defendant was otherwise subject to a 120-month consecutive term of imprisonment on Count 2 which, combined with the guideline sentence for Count 1, would have produced a sentencing range of 144-150 months' imprisonment. Compassionate release at this point would undermine Defendant's bargained-for sentence of 96 months' imprisonment and this Court's acceptance of that bargain.").

CONCLUSION

Defendant's motions (ECF No. 42) are denied.   The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not be in good faith, and therefore leave to appeal *in forma pauperis* is denied.

SO ORDERED.

Dated:      May 28, 2024
            Rochester, New York


_____
CHARLES J. SIRAGUSA
United States District Judge